THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:16-cv-00263-MR

| | |
|---|---|
| DEBRA SMITH, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 9] and the Defendant's Motion for Summary Judgment [Doc. 11].

## I. PROCEDURAL HISTORY

The Plaintiff Debra Smith protectively filed an application for a period of disability and disability insurance benefits and an application for supplemental security income on April 30, 2014, alleging an onset date of March 28, 2014.[1] [Transcript ("T.") 246, 253]. The Plaintiff's claim was

---

[1] At the ALJ hearing, the Plaintiff amended her alleged onset date to January 14, 2015. [T. 46].

denied initially and on reconsideration. [T. 134, 168]. Upon the Plaintiff's request, a hearing was held on October 26, 2015, before Administrative Law Judge Sherman D. Schwartzberg ("ALJ Schwartzberg"), at which time the Plaintiff and a vocational expert (VE) testified. On November 16, 2015, ALJ Schwartzberg issued a decision denying the Plaintiff benefits. [T. 19-32]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-8]. The Plaintiff has exhausted all available administrative remedies, and this case is ripe for review pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the Commissioner of any Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The

2

Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the

3

claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV. THE ALJ'S DECISION

In addressing the Plaintiff's claim, the ALJ found that the Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015, and that she has not engaged in substantial gainful activity since the amended alleged onset date of January 14, 2015. [T. 24]. The ALJ then found that the medical evidence established that the Plaintiff has the following severe impairments: Type II diabetes mellitus, degenerative disc

disease, carpal tunnel syndrome, anxiety, and depression. [T. 24-25]. The ALJ determined that none of the Plaintiff's impairments, either singly or in combination, met or equaled a listing. [T. 25-26]. The ALJ then assessed the Plaintiff's residual functional capacity (RFC) [T. 26-30], finding that the Plaintiff had the RFC to perform simple unskilled light work with the following limitations:

> [The Plaintiff] can stand and walk four hours in an eight-hour workday, sit six hours in an eight-hour workday, occasionally perform posturals, never climb ladders/ropes/scaffolds, [have] no exposure to hazards (heights, machinery, etc.) and vibrations, and [have] occasional contact with the public, supervisors and co-workers.

[T. 26]. The ALJ then determined that the Plaintiff has past relevant work as a census taker, an administrative assistant, and a sales person. Based on this RFC, the ALJ found that the Plaintiff has the ability to return to her past job as a census taker, as this work does not require the performance of work-related activities precluded by the Plaintiff's RFC. [T. 30-32]. In the alternative, the ALJ found that considering the Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that the Plaintiff also can perform. [T. 31]. The ALJ therefore concluded that the Plaintiff was not under a disability as

5

defined by the Social Security Act from the amended alleged onset date through the date of his decision. [T. 32].

## VI. DISCUSSION[2]

The Plaintiff presents three primary assignments of error. First, the Plaintiff contends that the ALJ failed to make a complete mental RFC assessment as required by SSR 96-8p. Second, the Plaintiff argues that the ALJ erred in assessing the Plaintiff's credibility. Third, the Plaintiff argues that the ALJ erred in relying on VE testimony which conflicted with the Dictionary of Occupational Titles (DOT) without obtaining an explanation and resolving the conflict in the written decision. The Court will address each of these assignments of error in turn.

### A. Mental RFC Evaluation

The Plaintiff asserts that the ALJ erred in evaluating her mental impairment by not assessing her work-related mental abilities on a function-by-function basis as required by Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (July 2, 1996). The Plaintiff, however, fails to identify with any specificity how she thinks the ALJ erred with regard to the function-by-

---

[2] Rather than set forth the relevant facts in a separate section, the Court has incorporated the relevant facts into its legal analysis.

function assessment, or what limitations she thinks the ALJ failed to include in the RFC.

In evaluating mental limitations, the ALJ must consider the claimant's abilities in the following broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, and pace; and (4) adapting or managing oneself.  20 C.F.R. §§ 404.1520a and 416.920a.  Here, the ALJ found that the Plaintiff was capable of performing a limited range of simple unskilled work.  "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985). By finding that the Plaintiff has the RFC to perform unskilled work, the ALJ has also, by definition, articulated a finding that the Plaintiff can perform the abilities listed above.  While the Plaintiff complains that the ALJ did not account for moderate difficulties in concentration, persistence, or pace, unskilled work requires only that an individual be able to sustain attention for two hour periods at a time. Social Security Program Operations Manual

System (POMS) DI 25020.010.A.3.[3] Thus, "concentration is not critical" to unskilled jobs. [Id.].

Contrary to the Plaintiff's argument, the ALJ provided the necessary detailed assessment of the Plaintiff's mental limitations. The ALJ specifically observed that the Plaintiff has anxiety and depression that could reasonably result in some limitations, but not to the extent that the Plaintiff alleged. [T. 29-30]. Having already explained his findings in the four broad areas of functioning, the ALJ later explained that the evidence related to Plaintiff's mental impairments resulted in his finding that she had limited social interaction, but adequate task focus and persistence. [T. 30]. The ALJ then concluded that, as a result of these limitations, the Plaintiff was limited to simple unskilled work with no more than occasional contact with the public. [Id.]. Thus, the ALJ correctly assessed the Plaintiff's mental functioning and formulated an appropriate RFC to accommodate the Plaintiff's mental limitations.

With regard to her moderate limitations in concentration, persistence, or pace, the Plaintiff argues that the ALJ's decision fails to "analyze, discuss, or determine" her ability to stay on task. [Doc. 10 at 7]. In fact, however, the

---

[3] Available at https://secure.ssa.gov/poms.nsf/lnx/0425020010 (last visited Sept. 25, 2017).

ALJ specifically stated that Plaintiff "can sustain focused attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in routine and repetitive, not detailed or complex, work settings." [T. 25]. Thus, the ALJ made a specific finding about the Plaintiff's ability to stay on task.

To the extent that the Plaintiff attempts to argue that she cannot maintain concentration for the two consecutive hours required to do unskilled work, the Plaintiff fails to cite any evidence of record to support such a claim. Moreover, the ALJ cited to substantial evidence of record indicating the Plaintiff's ability to concentrate. Specifically, the ALJ cited normal mental status examinations through December 2014, including "normal concentration and memory." [T. 28, 565]. The ALJ also cited the opinions of state agency medical psychologist Keith O. Noles, Ph.D., and W.W. Albertson, Ed.D., that, despite moderate limitations in concentration, persistence, or pace, the Plaintiff nevertheless had sufficient concentration and persistence to be able to complete simple tasks. [T. 29, 129, 163].

The Plaintiff next argues that the ALJ failed to adequately explain the effects of her moderate limitations in social functioning. [Doc. 10 at 10]. Contrary to the Plaintiff's argument, however, the ALJ accounted for such limitations by noting in his decision that the Plaintiff can initiate social

9

contacts, communicate clearly, participate in group activities, and demonstrate cooperative behaviors with difficulty. [T. 25]. The ALJ further noted that Plaintiff "gets nervous in crowds and has panic." [Id.]. The ALJ also cited Drs. Noles and Albertson's opinions that the Plaintiff could not function well in situations that required significant public contact. [T. 29]. The ALJ considered Plaintiff's limited social interaction and concluded that she should have no more than occasional contact with the public, co-workers, and supervisors. [T. 26]. The ALJ properly accounted for these limitations.

The Plaintiff points out, correctly, that the hypothetical question that the ALJ posed to the VE failed to include a limitation to occasional contact with co-workers. [Doc. 10 at 11]. The Plaintiff, however, does not argue how the failure to include the additional limitation regarding co-workers in the hypothetical posed to the VE would have changed the ALJ's conclusion regarding the availability of a significant number of jobs that the Plaintiff could perform. As the Plaintiff has not identified any prejudice resulting from the ALJ's failure to include this limitation in the hypothetical, such error does not require remand. See Farnsworth v. Astrue, 604 F. Supp. 2d 828, 837 (N.D. W. Va. 2009).

The Plaintiff next argues that the ALJ did not discuss the effects of her limitations in activities of daily living on her ability to work. [Doc. 10 at 12-13]. In this case, the ALJ found that the Plaintiff had only mild limitations in activities of daily living. In so finding, the ALJ noted that the Plaintiff reported that her daily activities consisted of getting up, fixing her own breakfast and lunch, watching television, talking on the phone to several people, doing chores, and shopping once a month. [T. 26]. Additionally, he noted that she managed her household affairs and funds, and that she drove a car daily. [T. 30]. The ALJ found that the Plaintiff was capable of initiating and participating in a wide range of activities independent of supervision or direction. [T. 25]. While acknowledging that the Plaintiff's mild limitations might interfere with complex activities, he found that performing a simple routine would be "appropriate, effective, and sustainable." [Id.]. The ALJ adequately accounted for the effects of the Plaintiff's mild limitations in daily activities on her ability to work.

For all of these reasons, the Court concludes that the ALJ did not err in assessing the Plaintiff's mental limitations. The Plaintiff's first assignment of error, therefore, is without merit.

B.   **Evaluation of Plaintiff's Credibility**

Next, the Plaintiff argues that the ALJ erred in evaluating the credibility of the Plaintiff's subjective complaints.

When assessing subjective symptoms, the ALJ must first consider whether there is a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b). If there is such an impairment, then the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which these symptoms limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c) and 416.929(c).

Here, the ALJ properly followed this two-step process when assessing the Plaintiff's alleged symptoms. In so doing, the ALJ considered the entire evidence of record and the following specific factors: daily activities; the location, duration, frequency, and intensity of symptoms; precipitating or aggravating factors; the type, dosage, effectiveness, and side effects of medications used to alleviate pain or symptoms; and other treatments used to relieve pain or symptoms. See 20 C.F.R. §§ 404.1529(c) and 416.929(c). For example, as noted above, the ALJ considered and accurately recounted the Plaintiff's testimony about her daily activities. The ALJ considered the nature of the Plaintiff's symptoms, including her alleged uncontrolled

12

diabetes with high blood sugar levels despite medication; her inability to exercise due to a bad back; her reports of hand tingling and dropping objects; her reports of blurry vision; and her depressed and anxious mood with resulting inattention and distractibility. [T. 26, 28].

The ALJ also considered the Plaintiff's complaints of pain and tingling after standing for more than 15 minutes; her complaints that her legs tensed up after walking more than 300 feet; and her reports of increased anxiety in large crowds. [T. 26, 28]. He also considered the Plaintiff's report that her medications improved her symptoms of diabetes and anxiety/depression. [T. 27, 28]. Finally, the ALJ considered treatments other than medications that the Plaintiff used to relieve symptoms, including a TENS unit, which reportedly helped; wrist splints, which resulted in "significant improvement"; and psychotherapy, without which she reported increased symptoms. [T. 26, 28].

Contrary to the Plaintiff's argument [Doc. 10 at 15-16], the ALJ provided several specific reasons for not accepting all of her allegations about her symptoms. For example, the ALJ explained that the record failed to demonstrate that the Plaintiff's musculoskeletal impairment was so severe as to preclude all work activity. [T. 29]. The ALJ then cited that, with the exception of one emergency room visit for complaints of exacerbated back

13

pain, the record consistently documented full range of motion, normal strength, normal gait and station without assistive device, negative straight leg raise, normal sensation, and no cyanosis, erythema or edema of the extremities. [Id.]. The ALJ also considered that the Plaintiff had no complications from diabetes, and then listed the negative findings related thereto. [Id.].

Regarding the Plaintiff's mental impairments, the ALJ found that the Plaintiff's limitations did not exist to the degree she alleged. [T. 29-30]. Specifically, the ALJ observed that the Plaintiff had never had any psychiatric hospitalizations, that her mental status examinations were largely normal, and that the Plaintiff herself had reported improvement in her symptoms with treatment. [T. 30].

Contrary to the Plaintiff's claims, the ALJ identified which allegations he deemed credible. For example, the ALJ considered the Plaintiff's impairments in combination and acknowledged that the Plaintiff has some pain and limitations resulting from her degenerative disc disease and that lab tests demonstrated very mild carpal tunnel syndrome. [T. 29]. The ALJ stated that he had "fully considered her back condition and hand pain in limiting her to light work…" with several additional limitations. [Id.]. He also stated that he considered that her diabetes also causes some limitations that

he considered when formulating the RFC. [Id.]. Finally, the ALJ acknowledged that the Plaintiff's depression and anxiety caused limitations, observing that Plaintiff had limited social interaction. [T. 29-30]. The ALJ further noted the Plaintiff's ongoing treatment and use of medication for depression and anxiety, and stated that because of the Plaintiff's mental limitations, he was limiting her to simple, unskilled work with no more than occasional contact with the public, co-workers, and supervisors. [T. 30]. The ALJ's decision clearly reflects which allegations the ALJ credited.

For these reasons, the Court concludes that the ALJ did not err in assessing the credibility of the Plaintiff and her complaints of alleged symptoms. This second assignment of error is therefore overruled.

### C. Evaluation of VE's Testimony

Finally, the Plaintiff argues that the ALJ erred in accepting VE testimony that conflicted with the DOT and in failing to resolve the conflicts in his written decision. [Doc. 10 at 21-24].

Under the Social Security regulations, an ALJ is permitted to use the services of a VE to help determine whether a claimant's work skills can be used in other work, and the specific occupations in which they can be used. 20 C.F.R. §§ 404.1566(e) and 416.966(e). Social Security Ruling 00-4p requires the ALJ to obtain a reasonable explanation for any conflicts or

15

"apparent" conflicts between the occupational evidence a VE presents and the occupational information the DOT contains. SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).

Here, the Plaintiff argues that because the ALJ found her capable of standing and walking for four (and not six) out of eight hours a day, she necessarily cannot perform the light level jobs the VE identified in response to the ALJ's hypothetical. [See Doc. 10 at 23]. Specifically, she argues that the VE's testimony that an individual with her limitations can perform the occupations of office helper, routing clerk, and price marker conflicts with the DOT in that the "DOT descriptions of these jobs appear to require standing and/or walking in excess of this 4-hour limitation." [Doc. 10 at 24]. In support of this argument, the Plaintiff offers only "(See Attached)," without identifying or discussing the attached materials and without specifying which discrete tasks in these DOT descriptions she thinks show that the jobs at issue in this case require standing or walking more than four hours a day. [Id.].[4] The Plaintiff has not demonstrated what the "apparent conflict" is between the DOT and the VE testimony. Nor has she cited any legal authority to support her assertion that the occupations of office helper, routing clerk, and price

---

[4] The Plaintiff's attached materials consist of the DOT descriptions of Plaintiff's past relevant work as a census taker and of the three occupations mentioned above, and the case of Fogle v. Colvin, No. 3:16-cv-32 (W.D.N.C. Dec. 16, 2016) (Whitney, C.J.).

16

marker would require the worker to stand and walk more than four hours a day. Accordingly, the Court concludes that the Plaintiff's third assignment of error is overruled.

In sum, the Court concludes that the ALJ applied the correct legal principles and that his findings are supported by substantial evidence. Accordingly, the decision of the Commissioner is affirmed.

**O R D E R**

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 9] is **DENIED**; the Defendant's Motion for Summary Judgment [Doc. 11] is **GRANTED**; and the decision of the Commissioner is hereby **AFFIRMED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: September 26, 2017

Martin Reidinger
United States District Judge